Michael Vertkin
1982 Sobre Vista Road
Sonoma, CA 95476
phone 415-203-1116
Fax     707-938-3844

Michael Vertkin, Defendant, *Pro se*

United States District Court

Northern District of California

| | |
|---|---|
| Dr. Anna Vertkin, | ) **Case No.: C 07 4471 Sc** |
| Plaintiff, | ) **DEMAND FOR JURY TRIAL** |
| vs. | ) Answer to Complaint For Damages, Affirmative Defenses and Counter-Claim for damages against Plaintiff Anna Vertkin and Does 1 through 20 |
| Michael Vertkin, and Does 1-20. | ) |
| Defendants | ) |

## ANSWER TO COMPLAINT

DEFENDANT Michael Vertkin answers complaint of Dr. Anna Vertkin, Plaintiff and in response to each numbered paragraph hereof, states:

1. Denied
2. Denied
3. Denied
4. Admitted
5. Admitted
6. Denied
7. Admitted
8. Admitted

9. Denied

10. Denied

11. Without knowledge

12. Without knowledge

13. Denied

14. Denied

In addition to the above answers Defendant states the following regarding Plaintiff's complaint and asserts following affirmative defenses and counter-claim:

**INTRODUCTION**

1. At this time Plaintiff and Defendant are in the divorce proceedings for more than a year, case is still pending in Family Court, the Superior Court of State of California for the County of Marin Case No: FL 064242. At the time of divorce filing on September 26, 2006, Plaintiff has most of the family funds in her possession. Plaintiff is in the possession of family residence in County of Marin. The Plaintiff brought numerous petitions and motions in the divorce case, all of which were denied or dismissed by the Family Court. Defendant filed no motions in the divorce case. Plaintiff depleted most of the Defendant's funds and ability to borrow, and now using United States District court, as a tool to gain advantage in the divorce proceedings, totally deplete Defendant's resources and put Defendant deeper in debt. Plaintiff using the community funds in her possession to bring this action against Defendant. In effect, against standing restraining order of Family Court, Plaintiff using Defendant's own money to harass him, while Defendant has no funds to hire an attorney.

2. Defendant view this Complaint as frivolous, presented for the purpose to harass, cause needless delay and increase in cost of litigation for the Defendant. In her divorce case bench bar statement Plaintiff offered to drop instant law suit if Defendant agrees to forfeit his share of the community property.

3. Attorney for the Plaintiff failed to make reasonable inquiry into the divorce case, as it is related to this complaint.

.

## STATEMENT OF FACTS

4. After 30 years of marriage, on September 26, 2006 Michael Vertkin (Defendant) filed for Dissolution of Marriage. The Case is still pending In Superior Court of State of California for the County of Marin, Case # FL 064242.

5. Anna Vertkin (Plaintiff) filed for legal separation on September 28, 2006, but did not follow up on this filing.

6. Sometime in July of 2006, Plaintiff without knowledge of the Defendant transferred all of the Community Home Equity Funds in the amount of $345,000 to her individual Fidelity account.

7. On October 3, 2006 Plaintiff removed, without Defendant's knowledge, his personal desktop computer from the Defendant's home office.

8. Defendant's computer contained Defendant's work products as an engineer, Defendant's employer copyright information, financial information, passwords to the Defendant's financial accounts, his personal account numbers, credit card numbers and passwords, tax information, Defendant's health information, personal notes, diaries and other personal information.

9. Plaintiff took Defendant's computer to an unknown location for disassembly and alterations. Police report of missing computer was filed with the Mill Valley police department.

10. Sometime later in October 2006, at the insistence of her lawyers, Plaintiff did return Defendant's computer back to the residence. Returned computer was and still is in non functioning condition. Upon inspection of the computer by expert technician, it was discovered that the original hard drive was altered; removed and missing. New hard drive was installed. All original computer programs on new hard drive were missing. To date Plaintiff refused to provide Defendant with the information of whereabouts of his computer hard drive.

11. Plaintiff received a report by the Forensic Computer Experts form Saint Louis, MO, stating that the passwords on the Defendant's computer were bridged, all files copied and sent to Anna Vertkin and her boyfriend, Jim Goldberg for their examination and use.

12. Within days, after being served by the Defendant with the Petition for Dissolution of marriage, Plaintiff went to Switzerland and other overseas countries for more than a month, her office personnel stop making appointments for her patients, as she did not tell them when or if she will return.

13. Plaintiff applied for and received an overseas X-Trade account, which allows her to transfer currency form any domestic account to any overseas account in currency of country of destination

14. Upon Plaintiff's return from overseas trip, Plaintiff's boyfriend Jim Goldberg called Defendant on three different occasions, with the various threats.

15. Jim Goldberg (plaintiff's boyfriend) "ordered" Defendant to vacate his own house.

16. Jim Goldberg (plaintiff's boyfriend) asserted that he and Plaintiff has accessed Defendant's financial information (presumably from the computer Plaintiff removed

from the house) and on one occasion stated that he hired security guard at the Defendant's house with the orders to shoot the Defendant if he approaches his own property.

17. Jim Goldberg (plaintiff's boyfriend) was paid by the Plaintiff.

18. Jim Goldberg (plaintiff's boyfriend) solicited Bill MacEwen, a family friend and Plaintiff's patient, to testify that Defendant threaten him (Bill MacEwen) with the knife, which has never happened.

19. Bill MacEwen refused to perjure himself in the Court, following which Plaintiff did not return Mr. MacEwen calls for refills of his medications, causing Bill MacEwen pain and suffering.

20. Bill MacEwen received intimidating letter from the Plaintiff.

21. Plaintiff changed attorneys of record 6(six) times in the Dissolution of Marriage proceedings, in order to delay proceeding and cause Defendant more fees and expenses.

22. Subsequent to Defendant filing Petition for dissolution of marriage, Plaintiff filed numerous reports with the Mill Valley police department, with various false accusations against Defendant, including braking into her office, all of them were found as complaints *without merit*.

23. Plaintiff filed numerous complains against Defendant with financial institutions, US Post office and presumably FBI. None of those institutions contacted Defendant.

24. Plaintiff filed numerous motions in the divorce proceeding, several with the same "facts" as instant complaint. All of them were denied by the Court. She was ordered to pay sanctions to Defendant by the Family Court. To date she failed to comply with the Court order. At this time fines are due and owning

25. On June 12, 2007 Plaintiff's own psychiatrist, without solicitation from the Defendant, testified in Court under oath that Plaintiff is mentally ill and requires hospitalization.

26. On July 9, 2007 Manton L. Shelby, Plaintiff's attorney in Marriage Dissolution Case, testified in Court that the Plaintiff is mentally ill and unable to meaningfully participate in the Court proceedings. At the same time she was preparing this instant Complaint to District Court.

27. On July 9, 2007 Hon. Judge Verna A. Adams ordered Plaintiff to be examined by Court Appointed Psychiatrist. Plaintiff defied Judge's orders and to this date has not submitted for examination.

28. On July 29, 2007 Plaintiff filed motion challenging ability of Hon. Judge Verna A. Adams of Superior Court of California to preside over Marriage Dissolution Case, for cause. The motion was denied by the Judge Richard C. Martin of the Superior Court of California for County of Lake on August 24, 2007.

29. On December 5, 2006 Plaintiff filed temporary restraining order (TRO) against Defendant with numerous false accusations, including most of the accusation repeated in this Complaint to United States District Court. On August 21, 2007, confronted with the true facts at her deposition, rather than go to Court and be found liable for lying under oath, Plaintiff petitioned the Court to dismissed TRO ***with prejudice.*** On August 29, 2007 filed this Complaint.

30. On September 5, 2007 Court dismissed TRO against Defendant with prejudice.

31. Plaintiff fail to amend this instant complaint following partial grant by District Court of Defendant's Motion to Dismiss for cause.

### DEFENDANT ASSERTS FOLLOWING AFFIRMATIVE DEFENSES:

#### RES JUDICATA

FRCP Rule 12(b) (6).

32. On December 5, 2006 Plaintiff filed in Family Court Temporary Restraining Order (TRO) against the Defendant. The TRO contain a number of the false accusation against the Defendant, it also contain same set of the accusations repeated in this complaint. Confronted with facts at deposition, Plaintiff on August 21, 2007 agreed on the record to dismiss TRO <u>with</u> prejudice. Plaintiff petitioned the Court to dismiss TRO with prejudice on September 5, 2007, it was filed in Superior Court of State of California for the County of Marin, Case # FL 064242. On September 5, 2007 TRO was dissolved by Hon. Judge Verna A. Adams at the Marin County Superior Court.

33. This Complaint based on the same set of facts, as TRO which was in front of Superior Court of State of California for the County of Marin, Case # FL 064242.

34. In May, 2006 Plaintiff filed in Marin County Superior Court protective order with the same "facts" as an instant complaint, including charge that defendant installed "keystroke" program on her computers. After two separate hearings it was dismissed with prejudice by the Court.

### LACK OF JURISDICTION OVER SUBJECT MATTER

### FRCP Rule 12(b) (1).

35. The United Stats District Court is not a proper jurisdiction for bringing this complaint.

36. Cause of Action One through Four asserts that Defendant committed various USC violations regarding Plaintiff personal computers and her private office. Cause of Action Five through Seven asserts various State of California Code violations over which United States District Court not a proper Jurisdiction.

37. Defendant *<u>denies</u>* any and all such acts.

38. But even if it were true, at this time Plaintiff computers and her office is a community property, and so are all of her financial accounts. It will remain that until adjudicated different by the Family Court, in front of which the matter is pending. California law provides that, for purposes of division of the property upon dissolution of marriage or legal separation property acquired by the parties during marriage in joint form is presumed to be community property.

39. There is nothing in 18 USC §2511(a) and 1(c), 18 USC §1001, 42 USC 1301, Part C §1117 prohibiting installing legal programs on once own computers or legal transfer of money between own accounts or address changes. Thus chapters sited in the Complaint are irrelevant to this case, even on the face of it.

40. Defendant has no capacity of being sued over legal programs he installed on his own computers or transferring his own funds from one account to another. Plaintiff and Defendant were married for 30 years at the time of alleged violations; computers and office were and at this time is the Community property. Only Family Court in California could adjudicate which property is a community and witch is a personal property. This matter is now pending in Family Court, the Superior Court of State of California for the County of Marin Case No: FL 064242 over which it has *exclusive jurisdiction*.

41. Even if Plaintiff's allegation were true, after dismissal of the parts of this complaint on Defendant's Motion, maximum amount of controversy under federal law in this complaint, is a $ 1000.0

## **FUTILE ACT.**

42. Plaintiff asserts that the acts of the Defendant cause her trouble to testify as an expert witness.

43. If Plaintiff has or will have trouble to testify as an expert witness, it is due to Plaintiff's own actions and condition. Plaintiff has violated numerous Family Court orders including but not limited to submission to Psychiatric Evaluation by Court appointed Psychiatrist and Order to pay sanctions to Defendant.

44. Plaintiff was declared mentally ill by her own Psychiatrist Dr. Edwyne Nazarian at Court proceeding on June 12, 2007. Dr. Nazarian testified that Plaintiff for a long time was refusing to take prescribed medicine; Dr. Nazerian testified that she would not be surprised if she found out that Plaintiff, being a physician, is selfmedicating. Dr. Nazarian testified that she recommended Plaintiff's hospitalization due to mental illness, as early as May of 2006, and again recommended hospitalization on June 11, 2007.At the Family Court proceeding on July 9, 2007 Plaintiff's attorney Manton L. Shelby declared that Plaintiff is mentally ill and unable to assist him in prosecution of the case.

45. Any reasonable person would assume, that **_no_** Court in the country would allow mentally ill person, who herself defy Court Orders, testify as an expert witness. Ultimately, all of the Cases were Plaintiff testified, as an expert witness since October of 2006 until now, have to be reviewed by the appropriate Courts in order to determine validity and weight of Plaintiff's testimony.

46. Plaintiff medical office was closed shortly after separation, due Plaintiff's neglect. Defendant believes and intends to prove in Family Court preceding, that that the office was closed for the sole purpose to avoid generating income and paying support owing to the Defendant.

## **UNCLEAN HANDS.**

47. "He who comes to equity must come with clean hands".

48. In July of 2006 Plaintiff, without Defendant knowledge, transferred $345,000(which represented all of the home equity line of credit) from Community Chase Home Equity account into her individual Fidelity account. Plaintiff tried to conceal transfer by changing Home Equity account mailing address from her and Defendants residence to Plaintiff's office. Plaintiff also transferred Fidelity account mailing address from her and Defendants residence to her office.

49. In October 2006 Plaintiff, transferred $45,000 from joint E-trade account, the same account she charges Defendant of raiding, to her individual Fidelity account.

50. In July 2007 Plaintiff illegally, without Defendant's knowledge deposited in her personal account 3 checks totaling around $40,000. Checks were issued by the State Farm insurance company in both names of Defendant and Plaintiff.

51. Post separation, Plaintiff changed the password on the Defendant's E-trade IRA account, thus denying his access to his own Retirement account. Whereabouts of this account in unknown to the Defendant at this time.

52. Post separation, Plaintiff changed address on various Defendant Retirement accounts to the third party address.

53. Post separation, Plaintiff denied Defendant an access to joint Medical Savings Account, thus leaving Defendant at a time without means of Health Insurance.

54. Post separation, Plaintiff removed from the Defendant's home office his computer, alter it, removed hard drive, and sent it across the State lines to Company in Saint Louis, MO, to extracted financial, personal and work information. Sheared acquired information with the Jim Goldberg (plaintiff's boyfriend). Jim Goldberg threatened the Defendant on multiple occasions. Plaintiff did not return hard drive to this date and all of Defendant's personal, work, health and financial information still in possession of the Plaintiff and her boyfriend.

55. Plaintiff in her deposition, under oath admitted that she spent around $500,000 in community funds since separation, against standing restraining order.

56. Sometimes in September 2007, Plaintiff without Defendant knowledge and against standing restraining orders of Marin County Superior Court, removed Defendant from the insurance policy for the community house in Mill Valley, CA.

57. In November 2007 house suffered fire damage, leaving proceeds from the insurance claim solely in the name of the Plaintiff.

## **LICENSE**

58. Defendant *<u>denies</u>* entering Plaintiff's Office post separation. But even if he did, as a Community property the office was equally property of the Defendant. Plaintiff's own attorney, Neil Bloomfield in the Family Court proceeding asserted that the office is the Community property. All the equipment in the Plaintiff's office, most of the furniture and furnishings were bought by the Defendant, including the computers, which Plaintiff claims were compromised. Defendant helped in Plaintiff's office over the years, opening the office in the morning when office personnel was late, helping to hire personnel, filing patients charts etc, etc. Defendant had on occasion made appointments for the patients and had full access to the Plaintiff's computers and Medical Billing program, which was the only medical program on the Plaintiff office computer. Defendant, at Plaintiff's request, set up passwords for new employees at Plaintiff's office computers. Defendant did so with the expressed knowledge, consent and at the request of the Plaintiff. Defendant had keys to the Plaintiff's office.

59. Defendant's family provided very low interest loans to open and maintain Plaintiff's medical office.

60. Therefore an assertion that there was an unlawful entry or installing keylogger device on Plaintiff's computers is unconscionable even on the face of it.

#### SHAM

61. Defendant believes and therefore alleges that this Complaint is nothing less that an attempt by the Plaintiff to gain advantage in Marriage Dissolution Case and designed to deplete Defendant resources, resolve and his ability to peruse his rightful share of the Community funds.

### COUNTER-CLAIM

Defendant, Michael Vertkin files the counter-claim for money damages against Plaintiff Anna Vertkin and Does 1 through 20.

#### FIRST CAUSE OF ACTION

18 U.S.C. § 2511 (intentional disclosure and Intentional use)

62. Paragraphs one through sixty one of the Statement of Facts of this pleading are incorporated by reference into this Cause of Action.

63. The described alleged action of intentionally removing Defendant's computer, retrieving electronically stored information including private e-mails, financial information, diaries, his health information, his work product and his employer copyright information from the Defendant's computer are direct violation of Michael Vertkin's rights. Plaintiff removed computer from Michael Vertkin home office, took it to the unknown location for

1  alteration where the passwords were compromised, information retrieved, hard drive
2  removed, altered and sent across the state lines for further retrieval of information.
3  Private information retrieved from the computer was sheared with Defendant boyfriend
4  Jim Goldberg to whom copies of the files form the Defendants computer were sent.

64. Despite repeated requests form Defendant and his family case attorney, hard drive of the Defendant computer was not returned to this date.

65. The acts of Plaintiff have caused irreparable damage not only to Defendant's professional reputation, but also his ability to work from home since all the copyright employer files were compromised. All finished Defendant work product was lost and Defendant was not able to deliver to his employer work product stored on computer for which he was partially paid. The abovementioned are the direct and proximate cause of Defendant Michael Vertkin's injuries and constitute, in violation of 18USC §2511 entitling Defendant Michael Vertkin judgment against the responsible Plaintiff for damages, punitive damages and attorney's fees, as prayed below.

## SECOND CAUSE OF ACTION

California Tort Law

(Invasion of privacy-intrusion of solitude)

66. Paragraphs one through sixty one of the Statement of Facts of this pleading are incorporated by reference into this Cause of Action.

67. Basis for liability and recovery of damages against Plaintiff arise herein, and subject to pendant Court's jurisdiction under California tort law, as a matter of invasion of privacy-intrusion of seclusion of Defendant Michael Vertkin. Under both California and Common law this tort defines as an invasion that would be highly offensive to the ordinary,

reasonable man, as the result of conduct of which the reasonable man would strongly object. Further, the Defendant will show some bad faith or utterly reckless praying.

68. Post separation, Plaintiff Anna Vertkin removed from the Defendant home office his computer. Plaintiff bridged passwords to Defendant's computer, removed hard drive and sent it across state lines for information extraction, including Defendants diaries, his personal account numbers, his credit card accounts and passwords to accounts and credit card on line access codes. Being that the Plaintiff was in a period of legal separation from the Defendant at the time of the occurrence, it is reasonable to believe that she knew or should have known this was a behavior not authorized by the Defendant, and shall be construed as reckless praying. Plaintiff should have known the information she is extracting from the Defendant's computer and shearing with here boyfriend Jim Goldberg, was privileged and would cause harm to Defendant. Therefore, Anna Vertkin has committed Invasion of Privacy-intrusion of solitude under California and Common Law.

### **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for judgment as follows:

1. Dismissal of the Complaint with prejudice.
2. Compensatory damages according to proof.
3. Costs of the this law suit, including future attorney fees.
4. Fines against Plaintiff for filing frivolous and unfounded Complaint, in order to gain advantage in the divorce case.

5. Sanctions against attorney Robert L. Shepard, as provided by FRCP Rule 11 for filing frivolous Complaint, failure to make reasonable attempt to inquire into related case, and exploiting mentally unwell Client for a financial gain.

6. Special damages, as to loss wages to attend to this Complaint and loss of future wages by the Defendant according to proof, having to deal with this Complaint

7. Such other relief as may be warranted or as is just and proper.

**JURUY TRAIL DEMANTDED**

*Date: February 5, 2008*                               Respectfully submitted,

_____

Michael Vertkin, defendant, *pro se*